# APPENDIX # 7

**COPY SMITH'S WRIT OF PROHIBITION FILED WITH MINNESOTA COURT OF APPEALS**

9-11-2024

IN THE DISTRICT COURT 4TH JUDICIAL DISTRICT
FOR THE STATE OF MINNESOTA

JERRY SMITH,

           Plaintiff,

                           CASE NO. 27 Civ. 23-19463-JA

vs,

ALLSTATE INSURANCE, et. al., ota

           Defendants,

Filed in District Court
State of Minnesota
2024 SEP 10 P 1:10

Clerk of Court

Civil Division

300 South Sixth Street

Minneapolis, Minnesota 55404

Dear Clerk:

I request the two document-Affidavit Jerry Smith In Support To Recuse Judge Jamie Anderson and Memorandum of Law In Support To Recuse Judge Jamie Anderson be filed in the above styled case. **I further request you submit these documents to the Chief Judge of the 4th Judicial District of Hennepin County, Minneapolis, Minnesota to be acted upon per rule governing this subject matter.**

I trust that you will acknowledge receipt of this correspondence at your earliest convenience. Thanking you in advance for your time and consideration in this matter of mutual concern.

Respectfully submitted,

J Smith

Jerry Smith
600 West 93rd Street Apt. 107
Bloomington, Minnesota 55420

7A



Filed in District Court
State of Minnesota

2024 DEC -2 PM 12 15

# AFFIDAVIT OF TESTIMONY

I, Abdirahman Warsame, HEREBY STATE THAT I AM A PERSON OF LEGAL AGE OVER 18 YEARS OF AGE. ON November 12, 2024 at appropriately 1:20 PM. Acting at the direction of Jerry Smith, I personally delivered to **STINSON, LLC-** 50 South Sixth Street, Suite 2600, MINNESPOLIS, MINNESOTA 55402 A COPY OF MR. SMITH PETITION FOR WRIT OF PROBITATIONN ADDRESSED TO SHARON MARKOWITZ, STINION LLC, BY LEAVING said document at the above address.

Further affiant sayeth naught.

Dated this 2ND day of December, 2024.

_____
Abdirahman Warsame

15153 Norway St NW

Mn 55304

612-234-0530

Subscribed and sworn to before me this 2nd Day Of December, 2024.

Notary public: Sara Kate Wagner

My commission expires: Jan. 31, 2028



SARA KATE WAGNER
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

7 B

11-29-2024

# STINSON

Sharon Markowitz

50 South Sixth Street Suite 2600,

Minneapolis, MN 55402

DIRECT: 612.335.1974

sharon.markowitz@stinson.com

Re: In re Jerry Smith, Petitioner Case No. A24-1746

Dear Ms. Markowitz,

Pursuant to our telephone conversation on 11-26-2024 you advised me that you have received a copy of my petition for writ of probation I filed and which is pending with the Minnesota Court of Appeals in the above captioned matter. I further advised you that I had you served on this subject matter on 11-12-2024 by courier Abdirahman Warsame which you state you did not receive.

Please find a 2nd copy of my petition served upon you with this correspondence. Moreover, please find a copy of the affidavit of the courier Abdirahman Warsame that I served the 1st petition you did not receive.

Respectfully submitted,

*J Smith*

Jerry Smith

600 West 93rd Street Apt. 107

Bloomington, Minnesota 55420

CC: Clerk of the Court of Appeals, St. Paul, Minnesota. Copy of Affidavit of Mr., Abdirahman Warsame; and Clerk of Court, Civil Division, Minneapolis, Minnesota 55487.

STATE OF MINNESOTA
IN THE COURT OF APPEALS

CASE NO. A-24-1746

JERRY SMITH

                Appellant

V.

JAMIE ANDERSON, DISTRICT JUDGE, HENNEPIN COUNTY,
4TH JUDICIAL DISTRICT, MINNEAPO, MINNESOTA;
ALLSTATE INSURANCE AND HARTFORD INSURANCE

                Respondents

### Writ Of Prohibition

Come now Appellant Jerry Smith (hereafter referred to as "Smith") and respectfully files his application for a Writ OF Prohibition requesting an order from this court directed to Honorables Jamie Anderson, District Judge, 4th Judicial District, Allstate Insurance and Hartford Insurance to recuse herself and/or decide whether grounds exist she be removed based on Smith's formal motion filed to recuse Judge Anderson for cause. Moreover, Smith seeks an order requiring Allstate Insurance and Hartford Insurance to promptly show cause why they have failed/denied to pay Smith his Minnesota No Fault Loss Wages and Medical Benefits the past four years in support hereof Smith state and alleges to-wit:

1. On December 28, 2023, Smith filed a lawsuit Case No, 27 Civ, 19463 in the District Court of Hennepin County, 4 Judicial District, Minneapolis, Minnesota. The case was assigned to Honorable District Judge Jamie Anderson. **See Appendix 1 and 2.**

2. On February 5, 2024, Defendant Japs-Olson filed a Notice of Removal of the foregoing case to federal court; Moreover, all other Defendants consented to the removal filing separate motions of appearance joining Defendant Jap-Olson removal request. **See State Log of Pleading-Notice of Removal to Federal Court, Exhibit B, page 3, paras 3-4. See Appendix 3. 1/** Subsequent all Defendants filed motion to dismiss Smith's lawsuit based on Smith's failure to serve on Defendants (Except Japs-Olson) the Summons and Complaint. **See Appendix 3**

3. All Defendants requests to dismiss Smith case was denied as moot by Federal Judge John Tunheim in an order entered on or about May 28, 2024. Defendants did not appeal this ruling. **See Appendix 4.**

4. In the May 28, 2024, order of the federal court District Court Judge Tunheim granted Smith request to amend and supplement Smith complaint (Doc. 63 and 73-pleading filed in federal court by Smith) and Smith request to return the case back to state court of.

---

[1] U.S. District Judge John Tunheim in his order dated May 28, 2024, made the following finding, page 3, of his order Smith originally brought his complaint in Hennepin County alleging a myriad of claims against numerous defendants... Defendants Japs-Olson, Jesse Dodge, and Mike Beddor, <u>with the consent of all served defendants removed the action under 28 U.S.C. Section 1331.</u>"

Hennepin County, Minneapolis, Minnesota. The remand order was filed in state court on 6-3-2024. **See Appendix 5**

5. On July 15, 2024, the district court Judge Jamie Andersson conducted a status hearing of the case after the remand from federal court. All parties were present during the proceedings. Judge Anderson advised that she had not yet received and/or read the remand order and was not in a position at this time to proceed in the matter. Judge Anderson further advised all parties she would take a week or longer to get up to speed on the case and subsequent issue a scheduling order in the case. Smith requested Judge Anderson to order the state clerk office to request copies of the federal pleading in the removal to federal court be obtained and filed in the state case so the district court would have an adequate record to determine what occurred when the case was removed by defendants. Judge Anderson commented to the effect that she does not tell federal court how to run their court and she will run her court as she pleased. Smith advised Judge Anderson the federal record was essential in assisting the district court in addressing pleading all parties would be filing in the instant case and Smith intends to reference in his pleading to be filed moving forward matters that occurred in federal court when the case was removed by defendants. Judge Anderson denied Smith request to have the pleading filed in federal court to be filed in the case sub judice

6. Smith filed with the state court a certified copy of all pleadings filed in federal court during the removal process. **See Appendix 6**

7. On July 16, 2024, Judge Anderson issued a Scheduling Order in the case notwithstanding her admissions the district court was not up to speed with the case after the remand. 2/ **See Appendix 7**

---

2. At the hearing Judge Anderson advised all parties if they had any response or objections to the scheduling order when the district court issue it parties could file their concerns with Judge Anderson and the district court would take them under advisement.

8. On 7-23-2024, Smith filed his response and objections to Judge Anderson Scheduling Order requesting the district court to correct material fact findings made in error by Judge Anderson and to make additional finding of facts and conclusion of law.3/ **See Appendix 8**

   9. On 9-3-2024 the district court conducted a hearing on Smith's request for TRO and Smith inquired whether the district court going to address Smith's response and objections to the Scheduling Order and the district court advised Smith that it was not going to do so. Smith requested Judge Anderson to state on the record the reason (s) why the district court denied Smith's request. Judge Anderson stated to Smith she did not have to give Smith any reasons why the district court was denying Smith's request. Smith further inquired whether Smith was going to be permitted to call witnesses at the TRO hearing and Judge Anderson replied that she does not permit witnesses 4/ to testify at TRO hearing; Smith requested Judge Anderson to place on the record the reason (s) why the district court was taking such a drastic measure and Judge Anderson advised Smith she does not have to have a reason and/or have to provide Smith with one. Smith advised Judge Anderson he object to the district court position taken on this matter. In addition, Smith inquired whether Judge Anderson was in receipt of a letter from Smith's attending doctor advising the district court of material facts affecting Smith's case and Judge Anderson advised Smith she had received said correspondence from Dr.Susan Ferron and Judge Anderson advised Smith the

---

3. At the hearing Judge Anderson advised all parties if they had any response or objections to the scheduling order when the district court issue it parties could file their concerns with Judge Anderson and the district court would take them under advisement.
4. Defendants counsel Ms. Hutchinson and Counsel for Jap-Olson advised Judge Anderson that Smith had failed to serve defendants et. al., with copy of Smith's amended complaint (Doc. 63 and 73) which is not true. Moreover, Ms. Hutchinson made further un-true allegation that defendants were not aware of which amended complaint was operative in the case when it is clear when Judge Talheim issued it order granting Smith's request to amend the complaint Doc. 63 which Smith served on all defendants both in federal and state court is the operative complaint. Smith is entitled to have the real facts reflected in his case and not half-truths allegations made by counsel for defendants.

-3-

5. Smith requested Jjudge Anderson to approve payment for issuance of several subpoenas for witnesses Smith intended to call as part of his case on the TRO; Judge Anderson denied Smith's request based on Smith's failure to demonstrate the need for said witnesses; Smith corrected this matter and filed for re-consideration of this matter based on the specific material facts alleged in Smith motion to Judge Anderson. Judge Anderson failed to address these concerns.

court will not allow this relevant information to be considered by the district court. Again, Judge Anderson failed to provide any rational reason for her decision.

10. Following the foregoing events Smith filed his motion and affidavit to recuse Judge Andeon for cause. **See Appendix 9**

11. Judge Anderson set the matter down for hearing on October 1, 2024. **See Appendix 10**

12. On October 23, 2024, Judge Anderson decided and issued an order denying Smith's request for a TRO requiring Defendants Allstate Insurance and Hartford Insurance to pay Smith his required Minnesota No Fault loss wages and medical benefits which had been denied in excess of four years to Smith by defendants. **See Appendix 11**

## ARGUMENT

13. This appeal is about ensuring that A judge follow the rules and law governing their activity when enacting with parties in a judicial setting and when a judge action is challenged for cause.

14. Smith has filed a formal motion requesting District Court Judge Jamie Anderson recuse herself from any and all further judicial acts surrounding Smith's case based on bias and prejudice mental impressions of Judge Anderson as succinctly set forth in paragraph 9, supra. Judge Anderson has failed to follow the Minnesota Appellate ruling governing removal of a judge based on "bias and prejudice" and continue to make rulings adverse to Smith despite the fact she has not addressed Smith's removal request and such conduct is contrary to law and authority ruling of the appellate court. Therefor a writ of probation and/or Mandamus is appropriate in this matter requiring Judge Anderson to comply with the law.

### A. The District Court Violated REMOVABLE Procedure

Smith argues when a formal request and application is filed for a judge to be recuse and/or removed for cause the only question remaining is for the district court to determine whether he/she should be removed.

- 4 -

Until that is accomplished by the district court judge the district court lacks jurisdiction to consider or rule on post-trial motions while the removable request is pending and has not been decided. Here Judge Anderson advised Smith she would take the matter under advisement and rule on the request later and subsequently went on to hear oral arguments from all parties that filed motions to dismiss Smith's complaint, and decided and denied Smith's request for a TRO requiring Defendants Allstate and Hartford Insurance to promptly pay Smith his Minnesota No Fault loss wages and medical benefits that have been denied to Smith over four (4) years by defendants.

A writ of mandamus is an extraordinary legal remedy, available when the petitioner demonstrates that (1) a failure to perform an official duty clearly imposed by law occurred; (2) the failure caused the petitioner to suffer a public wrong specifically injurious to the petitioner; and (3) there is no other adequate legal remedy. Mendota Golf, LLP v. City of Mendota Heights, 708 N.W.2d 162, 171 (Minn. 2006); Spann v. Minneapolis City Council, 979 N.W.2d 66, 78 (Minn. 2022); Minn. Stat. § 586.01 (2022).

B. Judge Anderson Failed To Promptly Rule On Smith's Removable Request An Official Duty Required Under Law.

Judge Anderson refused to rule on Smith's request to recuse her based on "bias and prejudice" exhibited toward Smith in a hearing on September 3, 2024 and October 1, 2024. The law underlying a request for removable of a district court judge is clear and the rule of procedure at issue here is Rule 63.03, which provides in relevant part:

Any party or attorney may make and serve on the opposing party and file with the administrator a notice to remove [the judge]. The notice shall be served and filed within ten days after the party receives notice of which judge or judicial officer is to preside at the trial or hearing, **but not later than the commencement of the trial or hearing.** No such notice may be filed by a party or party's attorney against a judge or judicial officer who has presided at a motion or any other proceeding of which the party had notice . . . . Minn. R. Civ. P. 63.03.

---

The timely filing and service of a notice under Rule 63.03 automatically results in the judge's removal. See McClelland v. Pierce, 376 N.W.2d 217, 219 (Minn. 1985) ("Proof of actual bias or prejudice is not required; the affidavit of prejudice itself is enough."); Peterson v. Bartels, 170 N.W.2d 572, 574 (Minn.

1969) (explaining that a timely affidavit of prejudice filed under previous Rule 63.03 required the trial court judge "to disqualify himself"); Jones v. Jones, 64 N.W.2d 508, 514 (Minn. 1954) (**explaining that the timely filing of an affidavit of prejudice "operates ipso facto to disqualify the presiding judge from hearing the case" and that "[n]othing is left for judicial discretion"**). 6/

> A DISTRICT COURT'S FAILURE to step aside when a timely notice is filed and served is reversible error. See Peterson, 170 N.W.2d at 574 (explaining that when a party has complied with the rule, "it was error for the trial court not to disqualify himself"). With these general principles in mind, Smith argues the district court is required to answer the only questions presented by this case: Was Smiths notice to remove timely? Whether a notice to remove complies with Rule 63.03, is a question of law subject to de novo review. See, e.g., State v. Cheng, 623 N.W.2d 252, 257 (Minn. 2001) (explaining that an appeal involving removal procedures under the Rules of Criminal Procedure "turns on the interpretation of" a court rule, which "is a legal question that we review de novo").

Smith states based on the foregoing it is err for Judge Anderson to fail to recuse herself and rule upon promptly whether she should step down from any further handling of the proceedings in Smith case. Smith request the appellate court to issue the writ and direct Judge Anderson to remove herself from any further action in Smith's case for the reasons stated herein.

> C. Judge Anderson failure to comply with the law caused Smith to suffer a public wrong specifically injurious to Smith because Judge Anderson committed fundamental err in deciding and denying Smith's request for TRO directing Respondents Allstate Insurance and Hartford Insurance to promptly pay Smith his loss wages and medical benefits pursuant to Minnesota No-Fault Insurance Act that have been denied to Smith by respondents Allstate and Hartford in excess of four (4) years. Smith alleged in support of his request fort RO before the district court the below material facts

---

2. Before 1985, Rule 63.03 provided for the filing of an "affidavit . . . of prejudice or bias," in which the party attested to "good reason to believe" that a "fair trial or hearing" could not be obtained before the assigned judge. Minn. R. Civ. P. 63.03 (1984). When a timely affidavit was filed, the clerk assigned the case to another judge in the same district. Id. Rule 63.03 was rewritten in 1985 to adopt the "notice to remove" standard, see Minn. R. Civ. P. 63.03, advisory comm. note—1985, which relieved a party of the obligation to assert a good-faith belief that the assigned judge was prejudiced. Although the name and the details of the filing have changed, the result, if timely, is the same: removal is automatic. See 2A David F. Herr & Roger S. Haydock, Minnesota Practice—Civil Rules Ann. § 63.11 (5th ed. 2012) (explaining that "a notice to remove properly and timely filed

-6-

## STATEMENT OF THE FACTS

### II. THE MAY 5, 2021 MVA

1. PLAINTIFF JERRY SMITH (SMITH) was involved in Motor Vehicle Accident (MVA) on May 5, 2021. Smith had pre-existing conditions, including but not limited to (i.e., back, shoulder and neck pain, migraine headaches and depression) which were exacerbated substantially following the foregoing MVA. Smith treating providers Dr. Christopher Burke, (Therapist) Dr. John Sheriff, (Psychiatrist) Dr. Susan Ferron (Pain Management) and Dr. Zeke McKinney (Occupation Medicine) faxed monthly medical reports to Allstate concerning Smith's treatment, diagnosis, progress, difficulties in care and Smith's ability to return to work. **See Smith Attached Ex, #1-Letter by Dr. Ferron-September 14, 2022.**

2. Dr Ferron in a medical summary report dated **06-1-2021**, she provided too defendants stated in relevant part:

**History of Presence Illness:**
Jerry Smith is a 70-y. o. man with a history Of post-concussion systems.

HP. Mr. Smith has been involved in two motor vehicle accidents that have led to a post-concussion and exacerbation of PTSD. **He was in another car accident on May 5, 2021 That has led to an exacerbation in Symptom.** 3/

3. Smith sought no-fault benefits from his insurer, Allstate for the resulting expenses. Smith's policy with Allstate has a no-fault medical coverage limit of $120,000, disability income loss and wage loss limit of $50.000. Smith have stacking dual medical and wage loss economic benefits with Allstate.

3a. Allstate denied **(after several requests made by Smith and Smith's medical providers)** provided Smith's no-fault benefits. Smith has not received any of his no-fault benefits to-date from Allstate.

- 7 -

3b. Smith medical1 doctors on January 28, 2021 (Dr. Zeke McKinney) and February 21, 2021, (Dr. Susan Ferron) collectively determined Smith health and welfare had been substantially impacted by Covid-19 that led to an adjudication Smith is incompetent and unable to manage his personal and legal affairs. Defendants Allstate, Parsons, Soto, Jones, Ryan and John/Jane Does were appraised of Dr. McKinney and Dr. Ferron's findings concerning Smith because this information was faxed to defendants by Dr, Ferron.

3c. Allstate, Parson, Soto, Jones, Ryan and unknown John/Jane Does have regularly been provided with detail medical reports (last one sent to Allstate November 2022, Dr Ferron & July 2023-Dr. McKinney) advising Allstate of Snith medical care and welfare and notwithstanding this undeniable material fact defendants continue to deny Smith his Minnesota No-Fault Economici Benefits.

3d. This is willful, deliberate and discrimination conduct based on Smith age, race, disabilities and violates the Minnesota State

Automobile Insurance Act, Minnesota Human Rights Act and Minnesota State Constitution. Moreover, Defendants acts and practices constitutes intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and negligence per se. It further denies Smith right to receive medical care, constitutes deliberate indifference and is cruel and unusual punishment in violation of the 8th and 14th Amendments to Constitution of Minnesota.

3e. Soto, Jones and Ryan were assigned by Allstate and Parsons as claim representatives and investigator acting within the scope of office or

-8-

employment to handle and process Smith no-fault basic economic benefits claim engaged in a pattern of denials of benefits to Smith over a three (3) year period based on Smith age, race, mental and physical health impairments.

3f.   Allstate and Parson are vicariously liable for Soto, Jones and Ryan's tortious conduct.

Under the MSTCA, Allstate and Parsons is subject to liability for torts "caused by an act or omission of an employee of Allstate and Parson while acting within the scope of office or employment." Minn. Stat. § 3.736, subd. 1. "Scope of office or employment" means that "the employee was acting on behalf of the employer in the performance of duties or tasks lawfully assigned by competent authority." Minn. Stat. § 3.732, subd. 1(3) (2022).

## OCTOBER 2018 MOTOR VEHICLE ACCIDENT

4.   On October 18, 2018, Smith, then 68 years old, was seriously injured when struck by a car at a traffic light crossing by Defendant Witcher driving her car in excess of thirty-five (35) miles per hour in a thirty (30) mile restricted driving zone, texting and/or on her phone, slammed into the passenger side of Smith's car.  1/   Smith was taken to the hospital by ambulance for treatment.  Smith treatment consisted of a concussion, lower-upper back pain, neck pain, and migraine headaches.  Smith has

-9-

been in long term physical therapy care for over five (5) years and has not been released to return to work by Smith's treatment providers.

> 5. At the time of the MVA, Smith owned and operated Self-Help Legal Law Clinic Inc., and worked parttime for two temp employment agencies -1) Command Center and 2) Professional Employment earning a weekly income more than $2000 dollars.

3. Smith obtained medical treatment for his injuries and sought no-fault benefits from his insurer, **Hartford** for the resulting medical expenses and wage loss benefits policy which have a no-fault medical coverage limit of $100,000 and a wage loss limit of $50,000. Hartford, Elliott & Ramos failed to pay Smith his full $700.00-dollar weekly wage loss over a three-year period, failed to properly investigate, document and pay Smith his full
Wage loss entitlement, intentionally failed to calculate and pay Smith appropriate weekly wage loss benefit using unprofessional method in denying same. discontinued Smith's no-fault benefits in August 2021 in direct violation of the Minnesota No-Fault Act, subjecting Smith to a financial hardship, exacerbation of mental and physical ill health, lied to Smith and Smith's treatment. provides when advising Smith that Hartford, Elliott & Ramos needed updated medical information with respects to Smith's medical

---

1. The repair shop where Smith had his car repaired was of the opinion after examining and replacing a damaged part of the body frame that kind of damage a car would have to be traveling more than 40 miles per hour.

condition in order to trick Smith's treatment providers to fill out the medical form Hartford, Eliot and Ramos sent to three (3) of Smith's medical providers and used that information to deny future economic benefits to Smith.

> 1. Hartford, Elliot and Ramos **discontinued** Smith's no-fault benefits in August 2021, while waiting to receive requested medical information from three of Smith's treating doctors. **<u>Smith's doctors promptly provided Hartford, Elliot & Ramos with the requested updated medical information advising Smith injuries in the October 18, 2018 MVA had been exacerbated by the MVA of November 17, 2020 & February 3, 2021 and no action were taken by these defendants to provide Smith with his due and accumulated loss wages and medical benefits under the Smith policy and no-fault act</u>**.
>
> Ramos induced Smith while incompetent and unable to handle his personal affairs, struggling with his disability impairments, and the stress, anxiety, anger, hopelessness, despair, pain and suffering defendants caused Smith to signed a contract settlement in the amount of $20, 000.00 involving the October 18, 2018 MVA. when Ramos contacted Smith by phone on or about August 2021 while Smith was traveling, extremely depressed and attempting to deal with the 5[th] Covid-19 death of a family member contrary to law, used the foregoing material facts concerning Smith's health and welfare, supra, through trickery, deceit, lies and fraud inducing Smith to enter into an agreement he did not

-11-

understand and based on
Smith's incompetence, medical conditions and findings by Smith's medical doctors. Moreover, Smith states after receiving from Ramos the written contract Smith sent Ranos an email advising Ramos that Smith refused to sign the contract because it failed to adequately reflect what Smith and Ramos discussed over the telephone (that it would not be used against Smith's other pending claims with Hartford & Elliot). Ramos advised Smith in a phone call to Smith the foregoing contract only applied to the 10-18-2018 MVA and would not be used against several other MVA claims Smith had pending with Hartford & Elliot.

2. Anderson, Martinez, Ramos and Stoner were assigned by Hartford and Eliot as claim representatives and investigator acting within the scope of office or employment to handle and process Smith no-fault basic economic benefits claim engaged in a pattern of denials of benefits to Smith over a 5 and ½ year period based on Smith age, race, mental and physical health impairments.

3. Hartford and Eliot are vicariously liable for Anderson, Martinez, Ramos and Stoner's tortious conduct.

    8a. Under the MSTCA, Hartford and Eliot is subject to liability for torts "caused by an act or omission of an employee of Hartford and Eliot while acting within the scope of office or employment." Minn. Stat. § 3.736, subd. 1. "Scope of office or employment" means that "the

-12-

employee was acting on behalf of the employer in the performance of duties or tasks lawfully assigned by competent authority." Minn. Stat. §

3.732, subd. 1(3) (2022).

9. On August 28, 2023, Dr, Paul Anderson Occupation & Environment Medicine filled out an application for disability benefits on behalf of Smith that was supported by medical reports, summary and notes from Dr. Anderson that he faxed to Hartford and Eliot to be acted upon for the benefit of Smith. Hartford and Elio have not acted upon, responded to or contacted Smith concerning this subject matter. It has been well over eleven (11) months since Dr. Anderson submitted the application for disability for Smith without any response from Hartford and Eliot.

4. **Defendant acts, pattern and practices** is willful, deliberate and discrimination conduct based on Smith age, race, disabilities and violates the Minnesota State Automobile Insurance Act, Minnesota Human Rights Ac, Minnesota Vulnerable Adult Act, and State Constitution. Moreover, Defendants acts and practices constitutes intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and negligence per se. It further denies Smith right to receive medical care, deliberate indifference and is cruel and unusual punishment in violation of the Constitution of Minnesota

**A TRO IS AN APPROPRIATE REMEDY TO ENFORCE A RIGHT TO MINNESOT NO-FAULT INSURANCE THAT HAVE BEEN DENIED BY RESPONDENTS ALLSTATE INSURANCE AND HARTFORD INSURANCE TO SMITH IN EXCESS OF FOUR YEARS**

Smith argues that Judge Anderson erred in holding that a TRO is inappropriate remedy to compel Respondents Allstate and Hartford Insurance to pay Smith his loss wages and medical benefits respondents have intentionally with-held over four (4) years owed to Smith. Respondents were only able to succeed at this because Smith had been adjudicated incapacitated and unable to assert his rights. In the case sub judice, the district court must resolve coverage disputes in order to protect parties "from the burden of unauthorized arbitration of both the coverage dispute and the merits of the insured's claim." U.S. Fid. & Guar. Co. v. Fruchtman, 263 N.W.2d 66, 71 (Minn. 1978). Thus, "it is not inappropriate for the parties to seek . . . a judicial determination of coverage prior to arbitration." Myers v. State Farm Mut. Auto. Ins. Co., 336 N.W.2d 288, 291 (Minn. 1983). The same standard applies in no-fault-arbitration cases, where arbitration is required by statute rather than contract. See Johnson v. Am. Family Mut. Ins. Co., 426 N.W.2d 419, 421 (Minn. 1988) (holding that courts must determine legal issues in no fault-arbitration cases). Arbitration is only mandatory under the act if there is a "claim . . . for no-fault benefits or comprehensive or collision damage coverage." Minn. Stat. § 65B.525. Thus, by the text of the statute, the district court must determine whether the claim and the benefits exist before compelling arbitration. Furthermore, in no-fault arbitration, the courts have a duty to provide consistent statutory interpretation. Johnson, 426 N.W.2d at 421. Therefore, district courts have an additional reason for determining legal questions before compelling arbitration.

Minn. Stat. § 65B.48, subd. 1 (2002). Economic loss includes benefits for medical expenses, disability, and income loss. Minn. Stat. § 65B.44 (2002); Loven v. City of Minneapolis, 639 N.W.2d 869, 870-71 (Minn. 2002). Economic loss may be contrasted with noneconomic loss, which includes "pain and suffering, loss of consortium, and inconvenience." Minn. Stat. § 65B.43, subd. 8 (2002).

Smith states it was insult to injury for Judge Anderson to deny Smith's request. Moreover, Smith has demonstrated the failure caused Smith to suffer a public wrong specifically injurious to Smith and there is no other adequate legal remedy. Based on the foregoing undisputed material facts it is clear the district court has exceeded its authority by 1) failing to make a prompt ruling on Smith's request to remove Judge Anderson for cause, 2) deciding and entertaining post-trial motions of defendants, i.e., motions to dismiss Smith complaint, Smith TRO request, prior to addressing the removal request made by Smith and 3) denying the TRO request made by Smith.

-14-

DATED THID 4TH DAY OF NOVEMBER, 2024.

Respectfully submitted,

*J Smith*

Jerry Smith

600 West 93rd Street #107
Bloomington, Minnesota 55420

Subscribed and sworn before me this 4th Day of November, 2024.

Notar Public: *Sara Kate Wagner*

My Commission Expires: JANUARY 31, 2028

SARA KATE WAGNER
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028